IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHNISA TURNER Individually and | § | |
| JOHNISA TURNER as Next friend of | § | |
| JANE DOE, a Minor, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: 4-12-CV-1570 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| ERIC H. HOLDER, JR., JUAN P. OSUNA | § | |
| JANET NAPOLITANO, JOHN T. | § | |
| MORTON, JAMES T. HAYES, JR., | § | |
| KENNETH LANDGREBE and ICE DOES | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COMES Plaintiffs, Johnisa Turner Individually and Johnisa Turner as Next Friend of Jane Doe, a Minor, filing this, their Plaintiffs' Original Complaint, and brings this action against The United States of America, Eric H. Holder, Jr., Juan P. Osuna, Janet Napolitano, John T. Morton, James T. Hayes, Jr., Kenneth Landgrebe and ICE Does, Individually and in their Official Capacity, who, jointly and severally, have denied Plaintiffs their rights as guaranteed by the Constitution and laws of the United States of America and the State of Texas.

## INTRODUCTION

1. This civil rights action seeks injunctive relief and compensatory and punitive damages as a result of the wrongful and illegal detention and deportation of Plaintiff Jane Doe, a 15-year-old minor United States citizen born and raised in Dallas

County, Texas. With ample evidence that Jane Doe was a U.S. citizen, officials from the Harris County Jail Detention Center referred her to ICE as a Columbian national unlawfully in the United States, despite the fact that Jane Doe had never been to Columbia, shared no Columbian heritage and spoke no Spanish.

2. Between or on or about April 6, 2011 and May 25, 2011 immigration officials and agents of the Houston, Texas District of the United States Immigration and Customs Enforcement ("ICE") Division, under the United States Department of Homeland Security ("DHS"), unlawfully detained Jane Doe at the Houston ICE Detention Center in Houston, Texas. At no time did any Defendant ascertain the fact that Jane Doe was a minor, and listed on the National Child Runaway list. ICE dismissed and/or failed to investigate Jane Doe's claims that she was a U.S. citizen. ICE ultimately removed Jane Doe to Bogotá, Columbia after a series of administrative removal hearings in which she received no legal assistance.

3. Jane Doe's illegal detention and deportation are the direct and foreseeable consequence of official policies, patterns, practices, and customs that manifest not only intentional discrimination based on race and ethnicity and a failure to recognize basic principles of due process, but also a reckless disregard for human life and liberty. Although the U.S. government has long been aware that its failure to implement due process protections in its immigration detention and removal procedures results in unjust detention, unfair hearings and illegal deportations, neither the Department of Justice nor the Department of Homeland Security, immigration and Customs Enforcement have rectified the shortcomings in their procedures and policies, leaving U.S. citizens like Jane

Doe vulnerable to erroneous apprehension, detention and deportation.

4. The United States government lacks the authority to deport one of its citizens. The Constitution vests certain rights in every individual born within our national borders, among these the right to live in this country. It is the obligation of the government, both at the state and federal level, to protect the liberty and security of its citizens. In this case, the government failed to protect Jane Doe, and individuals who lacked the proper training and oversight violated Jane Doe's constitutional rights, causing Jane Doe profound physical and psychological injuries.

JURISDICTION AND VENUE

*5.* This civil rights action is brought pursuant to, *inter alia,* the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* and at law for relief from commission of tortuous acts. This Court has jurisdiction over federal claims pursuant to the constitutional provisions enumerated and 28 U.S.C. § 1331 and § 1343 (3) and (4), as they are brought to redress deprivations of rights privileges and immunities secured by the United States Constitution and by law. Jurisdiction is also proper pursuant to the Declaratory Judgment Act, 28 U.S.C. § 220 1(a) and 2202. This Court has jurisdiction over the supplemental state claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b), in that Defendants are located in this state and district, and a substantial part of the acts and/or omissions giving rise to Plaintiff's claim occurred in this district.

PARTIES

*Plaintiff Johnisa Turner as Next Friend of Jane Doe, a minor*

7. Jane Doe is a 15-year-old United States citizen of African American descent born on March 24, 1996 in Dallas County, Texas. Jane Doe is represented by Johnisa Turner, her biological mother. In May 2011, Jane Doe was unlawfully detained by ICE and subsequently deported to Columbia, whereafter she endured over 7 months living in shelters of Columbia. Jane Doe speaks no Spanish, and until she was wrongfully deported, had never traveled outside of Texas much less the United States.

*The United States of America and the ICE, EOIR and DOJ Defendants*

8. Defendant United States of America is sued under the Federal Tort Claims Act for the wrongful and tortious acts of its employees and agencies. The United States is implicated by and through the actions, policies, patterns, practices, and customs of DHS and/or ICE and its policy-makers, agents, and officers.

9. Defendant Eric H. Holder, Jr. is the Attorney General of the United States and the head of the U.S. Department of Justice (the "DOJ"). Mr. Holder shares responsibility for implementation and enforcement of the immigration laws along with Defendant Janet Napolitano. Mr. Holder is sued in his official capacity.

10. Defendant Juan P. Osuna is the Director for the Executive Office for Immigration Review ("EOIR"), which is the federal agency that runs the Immigration Courts. Mr. Osuna is responsible for the supervision of the Deputy Director, the Chairman of the Board of Immigration Appeals ("BIA"), the Chief Immigration Judge,

the Chief Administrative Hearing Officer, and all agency personnel in the execution of their duties. Mr. Osuna is sued in his official capacity.

11.     Defendant Janet Napolitano is the Secretary of Homeland Security and the highest-ranking member of DHS, the arm of the U.S. Government responsible for enforcement of the immigration laws. Ms. Napolitano is sued in her official capacity.

12.     Defendant John T. Morton is the Director of ICE, the arm of DHS charged with detaining and removing aliens pursuant to federal immigration law. Mr. Morton is sued in his official capacity.

13.     Defendant James T. Hayes, Jr. at all times mentioned herein was the Director of the Office of Detention and Removal Operations, which is the primary enforcement arm within ICE for the identification, apprehension and removal of noncitizens unlawfully in the United States. Mr. Hayes is the author of a memorandum to all Field Office Directors within ICE, issued November 6, 2008, which sets forth certain guidelines and directives bearing on the treatment of detainees making claims of U.S. citizenship. Mr. Hayes is sued in his supervisory and individual capacity.

14.     Defendant Kenneth Landgrebe at all times mentioned herein was the Field Office Director for the Houston Field Office of ICE, which is the Field Office responsible for the enforcement of the immigration laws within the State of Texas. Landgrebe is sued in his supervisory and individual capacity.

15.     Unknown named ICE agents and officials are sued herein in their

individual capacities under fictitious names as "ICE Does" because their true names, titles, capacities, and/or degree of responsibility for the acts alleged herein are unknown to Plaintiff at this time. When Plaintiff ascertains this information, she will amend this Complaint accordingly. ICE Does include, but are not limited to, ICE Officials and Supervisors, ICE Officers, and/or Immigration Enforcement Agents with ICE (collectively, the "ICE Doe Defendants"). Plaintiff is informed and believes, and thereon alleges, that the ICE Doe Defendants are legally liable to Plaintiff in some part for the wrongful acts and omissions of which Plaintiff complains herein.

*DHS and CCA Defendants*

16.   All of the Defendants acted under the color of law, in bad faith, and contrary to established law and principles of constitutional and statutory law.

17.   Plaintiff is informed and believes and thereon alleges that each of the Defendants caused, and is liable for the unconstitutional and unlawful conduct and resulting injuries, by, among other things, personally participating in said conduct or acting jointly with others who did so; by authorizing, acquiescing or setting in motion policies, plans or actions that led to the unlawful conduct; by failing or refusing with deliberate indifference to maintain adequate supervision; and/or by ratifying the unlawful conduct taken by employees under their direction and control. Defendants' actions were taken pursuant to a policy, custom or usage of ICE and/or the Inter-governmental Services Agreement ("IGSA") between ICE and Harris County, Texas.

FACTUAL ALLEGATIONS

*Jane Doe's Background*

18. Jane Doe, hereinafter referred to as "JD", has been primarily raised by her step-father and mother, Johnisa Turner. Prior to being deported, JD was a good student and regarded by family members and peers as a well rounded responsible teenager. During the fall of 2010, JD began having some difficulty which stemmed from the death of her maternal grandfather. While grieving her grandfather's death, JD began acting out and getting into trouble. Ultimately, she was lured away from her home by a child predator. JD was 14 years old at the time and had never been away from home without a family member.

19. Like most child predators, this individual sought to separate JD from her family by playing on her naiveté and her youth. He put on her on a Greyhound bus in Dallas, Texas, trafficked her to Houston, Texas and began exploiting her including but not limited too giving her drugs and forcing her to sell them.

20. When JD went missing, Johnisa Turner immediately reported her disappearance to the Dallas Police Department. She also listed JD as a runaway with the National Child Runaway list. The registry is intended to alert law officials and lay persons that the listed individual is a runaway and provides contact information for anyone who may have seen or encountered them.

21. JD was subjected to abuse both physically and sexually at the hands of the man that trafficked her from Dallas, TX to Houston, TX. She was routinely made to put herself at risk with men that were more than twice her age. She was forced to sell and consume drugs and she suffered countless beatings.

22. At her first opportunity, JD ran away from her captor. She began to try

and make her way back to Dallas and back to her family. JD was conflicted by feelings of shame and guilt associated with the untoward activities that she had unwillingly participated in. She wasn't sure if her family would blame her or if she could possibly be arrested. She was unaware that she was the victim. JD believed that her mother would be angry with her. She had no idea that her family had been looking for her and wanting her home since the day that she was forced to leave Dallas.

*Jane Doe's Arrest and Detention in Houston, Texas*

23. JD began trying to earn money to return to her family. As a 14 year old, she was unable to get a job and often slept at the bus station and went hungry. Ultimately, she turned to shoplifting. She was arrested for shoplifting on April 2, 2011 at Greenspoint Mall in Houston, TX. She was transported to the Houston Police Department Sub Station on Mykawa in Harris County, TX to await arraignment on her shoplifting charge.

24. JD was afraid and unsure whether or not law enforcement had any information about the illegal activities that she had participated in while being held by the man who had trafficked her to Houston. Therefore when questioned about her identity, JD gave officers a false name.

25. JD told officers at the Mykawa sub station that her name was Tika Cortez. She did not present any form of tangible identification. Unbeknownst to her, Tika Cortez came up in their system as a 22 year old Colombian national. Upon information and belief, this 22 year Columbian national was either wanted by Colombian officials or flagged as being in the United States illegally. JD was booked and transported to the Harris County Jail on Baker St. in Harris County to await her initial court appearance. She was charged with theft and jailed under the name Tika Cortez in Cause No. 1748109.

26. JD's aka Tika Cortez' theft case was adjudicated in Harris County Court at Law # 13. Judge Don Smyth presided. JD was assigned a court appointed attorney. The attorney met with her in the holdover cell and told her that a plea of guilty would rapidly settle her matter despite the fact that he was well aware that she had an immigration hold and that Assistant District Attorney Sharon Chu had filed a motion to set a high bond of $35,000.00 in the Class B misdemeanor theft because of JD's aka Tika Cortez' immigration status. There were no discovery requests, no calls to the arresting officers for more information and most importantly, there was no conversation with JD regarding the ramifications of a guilty plea. As child, JD was scared and her age and developmental experience did not allow her to understand what she should expect or the legal remedies that they might otherwise be available to her. Therefore, JD was left unaware that she would be transported to the Houston ICE Detention Center after completing her eight day sentence in Harris County.

### *Jane Doe Was Transported To Houston ICE Detention Center To Await Removal*

27. Once she arrived at the Houston ICE Detention Center on April 18, 2011, JD faced a removal proceeding despite the fact that she was 14 years old and her physical appearance was commensurate with her age. She spoke no Spanish and knew nothing about Colombia and she did not appear to be of Colombian heritage. She did not have counsel and ultimately waived her right to an appeal again not knowing how to navigate the legal process on her own. JD remained in ICE custody for more than 30 days. Knowing it's commonplace for people who come in contact with ICE officials to sometimes give a fake name in order to avoid more serious punishment, it is still unclear

why ICE officials failed to confirm JD's identity with fingerprint analysis, genetically specific markers that suggest a person's origin, or other methods more definitive than just having a name and no documentation proof of her alleged Colombian citizenship during these hearings.  Upon information and belief, ICE officials failed to consult any sources to verify JD's, the alleged alien's, identity. ICE officials failed to talk with any family members or check the Non-Immigrant Information System (NIIS) for entry information and passport number. Nor did they contact the International Criminal Police.  ICE officials also failed to use the Secure Communities, a program that requires local police to submit the fingerprints of anyone booked into local jails with federal authorities, including immigration officials to make sure the right person is being subjected to removal hearings and possible deportation.

28. JD was told that she had a bond and that if her bond was paid she would be released pending the outcome of her removal proceedings. Therefore, JD began contacting individuals that she knew in the Houston area in an effort to get the money necessary to make the bond. She told several ICE officials her real name and that she was from Dallas, Texas but ICE officials did not believe her.  JD was afraid to call her family and could not find the words to explain that she was in ICE custody and facing deportation. She did not believe that her family would believe that to be even possible.

*Jane Doe Was Ordered Removed From The United States*

29. On May 23, 2011, 14 year old JD was shackled in a van with other deportees and transported to a location where she boarded a government plane and was deported to Bogotá, Colombia. JD did not speak any Spanish and did not have one family member or friend in Colombia.

30. When JD arrived in Colombia, she was processed through immigration in Bogotá and given identification stating that her name was Tika Cortez. A stranger noticed that she was crying and seemed out of place. He approached her and realized that she did not speak any Spanish. This unknown individual guided her to a social welfare program entitled "Welcome Home" run by the Colombian government that ultimately assisted her in finding shelter. It is unclear whether or not the Colombian government was paid to take JD aka Tika Cortez under a third party deportation agreement.

*Jane Doe In Columbia*

31. JD began working in Bogotá and supporting herself with the help of the Welcome Home program. She lived in a group home setting and was trained and paid to work at a call center. A portion of her earnings were used to pay for her room and board. JD remained in fear that it would be discovered that she was an American citizen and had been mistakenly deported. She was afraid that she would be jailed in Colombia and never see her family again. Faced with the reality of remaining in Colombia for the foreseeable future, JD began to try and adjust to life there and continue to fend for herself.

32. In September, 2011, JD became pregnant by a 29 year old man and was removed from the Welcome Home Program. She was moved to another facility. She did not receive any medical attention for her pregnancy while in Bogotá. She continued to work and pay to reside in group home setting designed for unwed mothers. She began to learn Spanish and resign herself to being in a foreign country with no friends or family.

*Jane Doe's Return Home To The United States*

33. JD remained in Colombia for approximately seven (7) months. During that period, her family looked for her tirelessly. Sometime in December 2011, JD's grandmother Lorene Turner, found information that led her to believe that JD had been deported to Colombia. She immediately contacted the Dallas Police Department who in turn contacted the State Department. It was confirmed that JD had been wrongfully deported to Colombia.

34. After attempting to get JD home for a few months with no success, the family turned to the media to get JD home. Only after, the media featured a story on an American teenager wrongfully deported to Colombia did anyone from the United States government make bringing Jane Doe home a priority. Within a matter of days, she was finally flown from Bogotá, Colombia to Dallas, Texas to be reunited with her family after almost a year of horrible occurrences, most of which could have been avoided. Her life will never be the same again.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Fifth Amendment to the U.S. Constitution / Due Process)
(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)
(Against Defendants Hayes, Landgrebe, and ICE Does)

35. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 34 of this Complaint.

36. By illegally, arbitrarily, and capriciously detaining Jane Doe, a United States citizen, and/or causing her deportation to Columbia, ICE Defendants Hayes, Landgrebe, and/or the ICE Doe Defendants deprived Jane Doe of her constitutional right

to liberty without due process of law in violation of the Fifth Amendment to the United States Constitution. Defendants deprived her of her liberty and/or caused Jane Doe to be deported without reasonable basis or lawful authority.

37. ICE Defendants Hayes, Landgrebe, and/or the ICE Doe Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

38. ICE Defendants Hayes, Landgrebe, and/or the ICE Doe Defendants' conduct violated clearly established constitutional or other rights of which these ICE Defendants knew, or of which a reasonable public official should have known.

39. These ICE Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Jane Doe's personal safety, security, freedom, and civil and constitutional rights.

40. These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Jane Doe has suffered economic damages and significant physical and emotional harm.

**SECOND CLAIM FOR RELIEF**
**(Fifth Amendment to the U.S. Constitution / Equal Protection)**

*(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)*
**(Against Defendants Hayes, Landgrebe and ICE Does)**

41. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs I through 34 of this Complaint.

42. By illegally detaining Jane Doe and/or causing her deportation to Columbia, ICE Defendants deliberately and unconstitutionally discriminated against Jane Doe on the basis of her race and ethnicity so as to deny her equal protection of the law in violation of the Fifth Amendment to the United States Constitution.

43. ICE Defendants Hayes, Landgrebe, and/or the ICE Doe Defendants and certain other named unknown ICE Doe Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations. ICE Defendants acted with the intent or purpose to discriminate against Jane Doe.

44. These ICE Defendants' conduct violated clearly established constitutional or other rights of which these ICE Defendants knew, or of which a reasonable public official should have known.

45. These ICE Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Jane Doe's personal safety, security, freedom, and civil and constitutional rights.

46. These violations are compensable under *Bivens v. Six Unknown Named*

*Agents of Federal Bureau of Narcotics,* 403 U. S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Jane Doe has suffered economic damages and significant physical and emotional harm.

### THIRD CLAIM FOR RELIEF
**(Fourth Amendment to the U.S. Constitution)**
*(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)*
**(Against Defendants Hayes, Landgrebe and ICE Does)**

47.  Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 34 of this Complaint.

48.  ICE Defendants Hayes, Landgrebe, and/or the ICE Doe Defendants intentionally detained Jane Doe in violation of his constitutional right to be free from unreasonable seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

49.  These ICE Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

50.  These ICE Defendants' conduct violated clearly established constitutional or other rights of which ICE Defendants knew, or of which a reasonable public official should have known.

51.  These ICE Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Jane Doe's personal safety, security,

freedom, and civil and constitutional rights.

52. These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Jane Doe has suffered economic damages and significant physical and emotional harm.

## **FOURTH CLAIM FOR RELIEF**

**(Federal Torts Claim Act)**
**(Against Defendant United States of America)**

53. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 34 of this Complaint.

54. ICE Defendants intentionally and unlawfully deprived Jane Doe of her liberty by (1) obtaining custody of Jane Doe, (2) holding Jane Doe, a United States citizen, in ICE custody for an appreciable period of time, and (3) physically expelling Jane Doe from the national borders of the United States.

55. These ICE Defendants were acting within the scope of their employment when they committed these acts.

56. Jane Doe never consented to ICE's apprehension, arrest, detention, or deportation of her.

57. As a direct and proximate result of this Defendants' conduct, Jane Doe has suffered and continues to suffer damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Negligence)
### (Federal Torts Claim Act)
### (Against Defendant United States of America)

58. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 34 of this Complaint.

59. ICE Defendants breached their duty of reasonable care by negligently acting or failing to act in such a way that resulted in Jane Doe's wrongful detention and deportation by ICE, which these Defendants knew or should have known posed a substantial risk of grave harm to Jane Doe.

60. ICE Defendants were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things:

- Failing to review readily available documentation, which stated that Jane Doe was born in the United States and possessed a valid Social Security Number;

- Failing to investigate National Runaway List that contained Jane Doe's name and photo on it and shows she was born in Dallas County, Texas;

- Coercing and manipulating Jane Doe to sign Form 1-826;

- Creating and/or sanctioning policies, patterns, practices, and customs of selecting inmates to detain, interrogate, and deport based on their race and/or ethnicity;

- Failing to adequately train and supervise personnel performing immigrations duties; and

- Detaining, holding and deporting a United States citizen.

61. These ICE Defendants were acting within the scope of their employment

when they committed these acts.

62. As a direct and proximate result of ICE Defendants' conduct, Jane Doe has suffered and continues to suffer damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
**(Intentional Infliction of Emotional Distress)**
**(Federal Torts Claim Act)**
**(Against Defendant United States of America)**

63. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 34 of this Complaint.

64. ICE Defendants' willful acts constitute outrageous conduct insofar as they were intended to cause Jane Doe to be held in ICE custody, interrogated, and expelled from the national borders of the United States.

65. ICE Defendants intended to cause Jane Doe emotional distress, and/or acted in reckless disregard of the likelihood of causing Jane Doe emotional distress, in committing these acts.

66. ICE Defendants were acting within the scope of their employment when they committed these acts.

67. As a direct and proximate result of ICE Defendants' acts, Jane Doe suffered and continues to suffer severe mental anguish and emotional and physical distress.

68. Jane Doe has incurred and continues to incur medical expenses and other

damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1. For general damages against the United States and ICE Defendants jointly and severally, in an amount to be proven at trial;

2. For special damages against the United States and ICE Defendants jointly and severally, in an amount to be proven at trial;

3. For punitive and exemplary damages against the ICE Defendants, in an amount to be proven at trial;

4. For reasonable costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a, and any other applicable state and federal law;

*5.* For injunctive relief against Defendants Holder, Snow, Napolitano and Morton, requiring the Attorney General, the Executive Office of Immigration Review, and the Department of Homeland Security to promulgate safeguards and policies as set forth herein and to adequately train and supervise employees in order to safeguard the rights of U.S. citizens subject to detention and possible deportation; and

6. For such other relief as the Court deems just, equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on any and all issues triable by a jury.

Date: May 17, 2012

Respectfully submitted,

<u>//s// Ray Jackson</u>
Ray Jackson
The Jackson Law Firm
SBN 00797754
3838 Oak lawn Ave., Ste1350
Dallas, TX 75219
214.651.6250 Office
214.651.6244 Facsimile

Chanae Connell
Overstreet and Connell
SBN: 24049407
2211 Norfolk Street, Suite 210
Houston, Texas 77098
713-228-4529

Attorneys for the Plaintiffs